Freddie D. JOHNSON, Petitioner,

v.

STATEWIDE COLLECTIONS, INC., a/d/b/a CheckRite, Respondent.

No. 88–285.

Supreme Court of Wyoming.

July 21, 1989.

---

94

John I. Henley, Vlastos, Brooks & Henley, P.C., Casper, for petitioner.

John C. Hoard, Casper, for respondent.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

This case, one of first impression in Wyoming, presents questions relating to the applicability of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 to 1692o (1977), relating to abusive, deceptive, and unfair debt collection practices to the efforts of a Wyoming collection agency to collect a check upon which the drawer had stopped payment. A threshold question challenges the jurisdiction of the district court to review a decision of a county court in a case brought under the small claims statutes, §§ 1-21-201 to 1-21-205, W.S.1977. In addition, an issue is asserted with respect to whether § 1-1-115, W.S.1977, which prescribes the notice requirements for collection of dishonored checks and justifies attorney fees, could be invoked to award attorney fees to anyone other than a collection agency.

Freddie Johnson (Johnson) obtained a judgment in county court against Statewide Collections, Inc. d/b/a CheckRite (CheckRite) for various violations of the federal statutes. CheckRite appealed that judgment to the district court, and that court reversed the judgment of the county court. Johnson then sought review in this court by a Petition for Writ of Certiorari, which was granted. We hold that the district court did have jurisdiction to review this case on appeal from the county court; the provisions of § 1-1-115, W.S.1977, require no construction in this instance; and, while we agree with the district court that some of the violations found by the county court are not established by the record in this case, there were violations of the federal statutes. We reverse the decision of the district court and reinstate the judgment entered in the county court.

In his brief as Petitioner, Johnson stated the issues presented for review to be:

"I. Whether non-verification of a debt by the debt collector is in violation of 15 U.S.C. § 1692g, which mandates that a debt collector obtain verification of an alleged debt, if put on notice by the alleged debtor or his agent, that the debt is in dispute.

"II. Whether the debt collector breached 15 U.S.C. § 1692f(2) by attempting to collect more than it statutorily or contractually could when such statute specifically prohibits such conduct and there was no testimony at the trial level that this was merely an inadvertent clerical error, nor was there any such factual finding by the trial court.

"III. Whether the debt collector violated 15 U.S.C. § 1692c(a)(2) in that it sent an additional demand letter to the alleged debtor with knowledge that the alleged debtor was represented by an attorney.

"IV. Whether the debt collector violated 15 U.S.C. § 1692e(14) by failing to advise the alleged debtor of its true name when the debt collector sent its initial demand letter.

"V. Whether the debt collector violated 15 U.S.C. § 1692j and/or acted in bad faith by failing to give notification to the alleged debtor that the debt collector was not in fact the true holder of the instrument after it had represented that it was and was authorized to attempt to collect the alleged debt.

"VI. Whether Wyoming Statute 1–1–115 was enacted for the exclusive use of debt collection agencies.

"VII. Whether the District Court of the Seventh Judicial District had any jurisdiction to consider an appeal from the small claims division of Natrona County Court.

Alluding to the Order Granting Petition for Writ of Certiorari in which the issues were framed in accordance with the petition, CheckRite adopted the same issues for purposes of its brief.

On November 11, 1986, Johnson purchased an inexpensive shotgun from a retail store in Casper, and he paid for the shotgun by drawing a check. The shotgun was purchased in the evening, and Johnson attempted to clean it after he had taken it home. He found that the action was defective and would not open. Early the next morning, he returned the shotgun to the seller and requested the return of his check or a refund. An employee of the store accepted the shotgun, but Johnson's request for a refund or the return of his check was refused. The employee advised that refunds or returns of checks were not permitted by store policy. The record does not establish what the store intended to do about the transaction, but Johnson, after advising the store employee of his course of action, contacted his bank and stopped payment of his check. The bank followed Johnson's instruction and returned the check when it was presented. The store then sent the check to CheckRite for collection.

In the meantime, Johnson attempted to resolve the matter by contacting the store. Instead of working things out with Johnson, the store simply referred him to CheckRite. When Johnson contacted CheckRite, he was referred back to the store with the advice that he must take up any problems about either the merchandise or his check directly with the store personnel. At this juncture, Johnson did not have the shotgun, he did not have his check back, and he had no satisfactory information from the store as to what it proposed to do about the defective merchandise.

On November 21, CheckRite sent a "Return Check Notice" to Johnson stating that $144.99 was due and that he should make an immediate payment in that amount directly to CheckRite. The $15 difference between the amount demanded and the $129.99 for which the check originally had been drawn was attributable to a "service charge." This notice did not, in any way, refer to the corporate name of CheckRite, which is Statewide Collections, Inc. Johnson promptly contacted his attorney, and the attorney wrote a letter to the store stating that Johnson disputed the alleged debt. That letter was sent by certified mail, and a copy was sent, also by certified mail, to CheckRite.

After it received the attorney's letter, CheckRite sent a second notice directly to Johnson, using certified mail, in which it referred to § 1-1-115, W.S.1977, and, again, demanded payment. In this notice, the name of the sender was Statewide Collections, Inc. d/b/a CheckRite. By this demand, Johnson was advised that the amount due was $148.16 if paid by January 8, 1988 but, after that date, the amount would increase to $293.15.

The two notices sent to Johnson were the only communications from either Check-Rite or the retail store. Verification of the alleged debt was never furnished to Johnson, and no correspondence was sent to Johnson's attorney despite his letter to the store with a copy to CheckRite. CheckRite did contact the retail store after receiving the attorney's letter and was advised that the store wanted the check pursued. Subsequently, the store reached a different decision, deciding not to pursue the collection, and asked CheckRite to return the check to it. CheckRite did return the check, but it never advised Johnson, or his attorney, of this fact, which was disclosed for the first time at the trial.

This action then was initiated in the County Court of Natrona County. Johnson alleged that CheckRite had violated the FDCPA, 15 U.S.C. §§ 1692 to 1692o, and that he had been damaged in the amount of $738 plus court costs as a result. Because the amount of damages claimed was less than $750, Johnson proceeded in Natrona County Court pursuant to §§ 1-21-201 to 1-21-205, W.S.1977 (June 1988 Repl.), which provide the procedure for small claims cases. We understand that Johnson intentionally limited his claim to keep it within the small claims statutes, even though the FDCPA provides authority for recovery of actual damages plus attorney fees plus an additional civil penalty of up to $1000. 15 U.S.C. § 1692k. After trial, the county court adopted the "Findings of Fact and Conclusions of Law" proposed by Johnson and entered its order and judgment

accordingly. It was this ruling that Check-Rite appealed to the district court, and that court, finding error, reversed the county court and dismissed all claims on October 17, 1988. Johnson pursued a "Petition for a Writ of Certiorari" in accordance with Rule 13.01, W.R.A.P. and § 5-2-119, W.S. 1977 (Cum.Supp.1988). We deemed the resolution of certain issues in this case to be important and granted Johnson's petition, ordering that briefs be submitted on specified questions.

With respect to the threshold question of the jurisdiction of the district court to review on appeal a case brought within the small claims statutes, Johnson's position in attempting to preserve his judgment from appellate review in the district court was that there is no statutory authority that expressly authorizes such review, and that the legislative policy in providing an expedited and informal procedure for the adjudication of claims that did not exceed $750 assumes that no appeal would follow.[1] CheckRite counters with the proposition that such a case is no different than any other case within the civil jurisdiction of a county court set forth in § 5-5-131, W.S. 1977, and that the power to review on appeal is inherent in the district court.

■ We acknowledge and accept Johnson's premise that, if the jurisdiction to review on appeal is absent, then the order by the district court reversing the judgment of the county court would be a nullity. *Fauntleroy v. Lum,* 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 (1908); *Earle v. McVeigh,* 91 U.S. 503, 23 L.Ed. 398 (1875); See *Matter of Contempt Order Issued Against Anderson,* 765 P.2d 933 (Wyo. 1988). We have no equivocation, however, in recognizing the jurisdiction of the district court to review this judgment on appeal.

Appeals from courts of limited jurisdiction, including both county courts and justice of the peace courts, are specifically authorized by § 5-2-119, W.S.1977 (Cum. Supp.1988). Additional legislative authori-

---

1. The statute has since been amended to increase the maximum amount of small claims to $2,000. Ch. 19, S.L. Wyoming 1989.

ty is set forth in § 5–5–142, W.S.1977 (Cum.Supp.1988):

"A party may appeal from any final judgment or sentence of a county court. The appeal may be taken to the district court within ten (10) days after the entry of the judgment by filing a notice of appeal in the county court."

Further authority is promulgated in Rule 1.03, W.R.A.P., which provides:

"Rule 1.03. Review by district court. "A judgment rendered or final order made by an administrative agency or any court inferior in jurisdiction to the district court may be reversed, vacated, remanded or modified upon an appeal taken to the district court for errors appearing on the record."

■ Johnson's argument is that neither the statutes nor the rule encompasses the requisite specificity to authorize an appeal from, what he describes as, a "small claims division" of the county court. Johnson overlooks the fact that no statute establishes a small claims division of the county court. Instead, the provisions of §§ 1–21–201 through 1–21–205, W.S.1977, collectively entitled "Article 2. Procedure for Small Claims," simply articulate an informal procedure. Cf. *Board of Commissioners of Natrona County v. Justice Court No. Two*, 529 P.2d 977 (Wyo.1974) (affirming the establishment of small claims proceedings in Wyoming under various statutes). We emphasize that these statutes establish procedure, not a separate court or court function.[2] We do not perceive any special factor relating to county courts that would justify adopting Johnson's premise. Section 1–21–201, W.S. 1977, identifies only cases in a justice of the peace court. In § 1–21–202(a), however, reference is made to the county court. Furthermore, § 5–5–105, W.S.1977, incorporates the legislative concept of affording authority to the county court to resolve those cases previously submitted in justice of the peace courts. More specifically, § 5–5–131(a)(iv), W.S.1977 (Cum.Supp. 1988), grants to a county court civil jurisdiction of those "[a]ctions for small claims as provided by W.S. 1–21–201 through 1–21–205." Following the rule set forth in *Story v. State*, 755 P.2d 228 (Wyo.1988), and *State Board of Equalization v. Tenneco Oil Co.*, 694 P.2d 97 (Wyo.1985), these several sections, when construed in pari materia, simply define a simplified procedure governing cases in county courts in which the amount in controversy was less than $750. The statutes do not address jurisdiction in any separate way that would justify a conclusion that the judgments in such cases are not within the appellate review jurisdiction of the district court. We perceive such actions as being no different, other than the informal procedure, from any other civil actions triable in county courts or justice of the peace courts, and it follows that appellate jurisdiction is assigned to the district court within the same county. Wyoming Constitution, Article 5, § 10. Jurisdiction to review on appeal to the district court was present in this case.

We then must consider the merits of the several asserted grounds for recovery under the FDCPA. Congress adopted this legislation in 1977 to protect consumers from abusive, deceptive, and unfair debt collection activities by eliminating certain offensive and unethical practices in vogue with many third-party debt collectors. *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3rd Cir.1987); *Staub v. Harris*, 626 F.2d 275, 62 A.L.R.Fed. 544 (3d Cir. 1980); *Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174 (W.D.N.Y.1988). The perceived need for such legislation had become apparent on an ascending scale in those

---

2. Because of the informality of the proceedings in small claims cases, it well may be that a district court would be presented with a record which would not accommodate to review because of its inadequacy. Such a circumstance clearly would justify the district court in dismissing the appeal in accordance with precedent from this court. *Korkow v. Markle*, 746 P.2d 434 (Wyo.1987). Cf. *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195 (Wyo.1987); *Salt River Enterprises, Inc. v. Heiner*, 663 P.2d 518 (Wyo.1983); *Nix v. Chambers*, 524 P.2d 589 (Wyo.1974); *Wydisco, Inc. v. McMahon*, 520 P.2d 218 (Wyo.1974). The power of the district court to dismiss because of an inadequate record, however, is entirely different from a denial of jurisdiction to review.

years immediately preceding its enactment because it was recognized that abusive debt collection rapidly was becoming "a widespread and serious national problem." *Riveria,* 682 F.Supp. at 176. The objectionable practices, still prevalent even after the adoption of the FDCPA, often are exacerbated because independent collectors generally are unconcerned with the consumer's opinion of them, or their own reputations in the eyes of the public, and they proceed accordingly. This attitude is different from that of the direct creditor who often wishes to maintain some good will as well as some prospect of salvaging future business from their effort. *Zimmerman; Riveria; Kimber v. Federal Financial Corp.,* 668 F.Supp. 1480 (M.D.Ala.1987); *Bingham v. Collection Bureau, Inc.,* 505 F.Supp. 864 (D.N.D.1981). Some of the objectionable practices, more blatant and egregious than others, that transgress the FDCPA include obscene and profane language, direct threats of violence, harassing phone calls made at any and all hours of the day or night, disclosure of the debtor's personal affairs to friends and employers, attempts to collect more than is owed, intentional misrepresentation of legal rights and obligations, and impersonation of public officials and attorneys. *Riveria; Bieber v. Associated Collection Services, Inc.,* 631 F.Supp. 1410, (D.Kan.1986). See *United States v. Central Adjustment Bureau, Inc.,* 667 F.Supp. 370 (N.D.Tex.1986).

Because the goal of the FDCPA is to eliminate abusive collection practices, it is applicable whether or not a valid debt exists. *Baker v. G.C. Services Corp.,* 677 F.2d 775 (9th Cir.1982). A violation of the FDCPA cannot be defended even by establishing that the debt was long overdue and difficult to collect. Standing is afforded an aggrieved consumer to proceed under the act as long as the collector was purporting to attempt to collect an alleged debt. In a report from the subcommittee, its chairman said, "every individual, *whether or not he owes the debt,* has the right to be treated in a reasonable and civil manner." 123 Cong. Rec. 10241 (1977); *Baker,* 677 F.2d at 777. The reach of the statute is limited, how-

ever, to third party debt collectors, and it has no force with respect to "persons or businesses collecting debts on their own behalf." *Staub,* 626 F.2d 275, 277, 62 A.L. R.Fed. 544 (3rd Cir.1980).

Administrative enforcement of the FDCPA is assigned to the Federal Trade Commission, 15 U.S.C. § 1692*l,* but the primary enforcement, in order to eliminate the objectionable practices, is self enforcement by the aggrieved debtor acting as a "private attorney general" through a civil action like that initiated by Johnson. 15 U.S.C. § 1692k; *Zimmerman, Staub, Riveria; West v. Costen,* 558 F.Supp. 564 (W.D. Va.1983). The incentive provided by the FDCPA for private enforcement is the recovery of attorney fees and costs, plus a civil penalty of up to $1000, in addition to actual damages when the debtor is successful in the civil action. 15 U.S.C. 1692k; *Costen.* While the FDCPA does yield to local law providing equal or greater protection and does permit the Federal Trade Commission to exempt from the act debt collection practices within the state, if it determines that those debt collection practices are subject to substantially similar requirements, the Wyoming legislature has not addressed the problem by enacting parallel, or more severe, legislation. Consequently, the FDCPA and other federal law on this subject are controlling for the disposition of this case. 15 U.S.C. §§ 1692, 1692n, 1692*o.*

Against this general background, we address the several claimed violations of the FDCPA that Johnson contends support the judgment awarded by the county court. The first of those arises under 15 U.S.C. § 1692g(b) which provides:

"(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment,

or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."

This provision of the FDCPA requires the verification, or validation, of the alleged debt in order to prevent collection activities from being directed against the wrong person or against a debtor who has paid. *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222 (9th Cir.1988); *Staub,* 626 F.2d at 277; *Riveria,* 682 F.Supp. 174. The language of the statute is clear and unambiguous, and we defer to the plain and ordinary meaning of the words finding it unnecessary to resort to any extrinsic material for either their construction or for the resolution of this case. *Blue Cross Association v. Harris,* 664 F.2d 806 (10th Cir.1981); *Sanchez v. State,* 751 P.2d 1300 (Wyo.1988); *Paravecchio v. Memorial Hospital of Laramie County,* 742 P.2d 1276 (Wyo.1987), cert. denied — U.S. ——, 108 S.Ct. 1088, 99 L.Ed.2d 249 (1988); *State Board of Equalization v. Jackson Hole Ski Corp.,* 737 P.2d 350, clarified on reh. 745 P.2d 58 (Wyo.1987); *City of Evanston v. Robinson,* 702 P.2d 1283 (Wyo.1985); *McArtor v. State,* 699 P.2d 288 (Wyo.1985).

On December 3, 1987, in response to CheckRite's notice dated November 21, 1987, counsel for Johnson furnished Check-Rite with a carbon copy of a letter addressed to the retail store advising that the debt was disputed. CheckRite, according to its manager, contacted the retail store and was advised that the check had been given by Johnson and that the store wanted it pursued. CheckRite did not send verification of the debt to either Johnson or Johnson's attorney. The manager testified that he had communicated with the retail store on several other occasions on each of which the debt was verified to him.

It was CheckRite's duty, under the statute, to cease collection activities on the date it received the letter from Johnson's counsel until it sent Johnson, through his counsel, verification of the alleged debt. *Staub.* The congressional intent is plain and no other meaning can possibly be imposed for this portion of the statute. *Sanchez.* The mandatory form of the word "shall" is used in the statute. CheckRite argues that the purpose of this statute is simply to inform the consumer of the basis of the claim being collected and that it does not encompass a situation in which the alleged debtor had notice of the debt. CheckRite's position is not sound because, in furtherance of its purpose, the statute does encompass those situations in which the alleged debtor may have adequate prior notice or knowledge of the alleged debt. *Swanson; Staub; Riveria.* Federal precedent suggests that "in construing a statute we are obliged to give effect, * * *, to every word Congress used." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); *Baker,* 677 F.2d at 778. Application of that concept to this statute manifests an implicit requirement that the verification furnished from the creditor be in writing because the statute also requires that a copy of the verification be mailed to the consumer. See *Hamlin v. Transcon Lines,* 701 P.2d 1139 (Wyo.1985); *State v. Sodergren,* 686 P.2d 521 (Wyo.1984). With that implicit requirement, an oral validation of a debt is not sufficient to comply with the FDCPA.

In this instance, the county court ruled that CheckRite had failed to comply with 15 U.S.C. § 1692g because it had not received a verification or validation from the retail store that it could mail to Johnson. We agree with the county court that CheckRite failed to comply with this requirement of the FDCPA. The district court reversed the county court on this issue, noting that the statute does not specify what is required for verification, but does allude to the fact that obtaining a copy of a judgment will suffice. The district court concluded that possession of the original check was the equivalent of obtaining a copy of a judgment and, therefore, adequate verification had been accomplished. In our view, this construction is erroneous and, in any event, CheckRite made no attempt to comply with the mailing requirement. The burden is upon the debt collector to demand adequate verifica-

tion so that it can comply with the mailing requirement of the statute. The failure to do so by CheckRite, in this instance, subjects it to the sanctions provided under 15 U.S.C. § 1692k.

 The next basis for liability raises the issue of whether CheckRite violated the provisions of 15 U.S.C. § 1692f(1) by attempting to collect more from Johnson than was permitted either by agreement or by law. The notice sent by CheckRite in the second instance demanded the amount of $293.15 if paid after January 8, 1988. That demand does violate the FDCPA in the absence of a contractual agreement creating the debt since no statutory authority permits such a claim. While the statute permits the doubling of the original amount of the check, the claimed payment is too high because it was more than double the amount of the check. CheckRite agrees that this is true, but defends its conduct as not a violation of the FDCPA by contending that the improper claim was the product of an inadvertent clerical error. CheckRite's theory was adopted by the district court in reversing the county court.

The pertinent portion of the FDCPA provides:

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is in violation of this section:

"(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f. The concession by CheckRite that the demand encompassed an overcharge manifests a prima facie violation of the FDCPA. *Costen,* 558 F.Supp. 564. In submitting its argument that the overcharge was the result of an inadvertent clerical error, CheckRite invokes 15 U.S.C. § 1692j. This appears to be an incorrect citation because that provision of the FDCPA is not on point. This justification could fit under 15 U.S.C. § 1692k(c) that provides:

"(c) Intent. A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

*Baker,* 677 F.2d 775. While CheckRite's explanation is plausible because the doubling of the amount of the check and the $15 service charge and the addition of the $3.17 in collection cost would equal the amount demanded, still CheckRite is not entitled to the relief provided in 15 U.S.C. § 1692k(c).

The record is silent with respect to any procedures reasonably adopted by Check-Rite to preclude just such an error. See *Bingham,* 505 F.Supp. 864. *Carrigan v. Central Adjustment Bureau, Inc.,* 494 F.Supp. 824 (N.D.Ga.1980), articulates the proposition that the collector is liable under the act without regard to whether the overcharge was intentional or not unless proper procedures to preclude the error are maintained. The suggestion by CheckRite that it is entitled to relief because there was no evidence that "this was other than a clerical error in spite of procedures to avoid such errors" is nothing more than an attempt to assign to Johnson the burden of proof. Title 15 U.S.C. § 1692k(c) establishes an affirmative defense, *Carrigan,* 494 F.Supp. at 826, however, it is CheckRite that is charged with the burden of producing evidence to justify its invocation. That burden cannot properly be assigned to the plaintiff in an action such as this. *Baker; Carlson v. Carlson and Citizens National Bank & Trust Company,* 775 P.2d 478 (Wyo.1989). See *Miller v. Badgley,* 51 Wash.App. 285, 753 P.2d 530 (1988). See also *DeCoria v. Red's Trailer Mart, Inc.,* 5 Wash.App. 892, 491 P.2d 241 (1971). CheckRite introduced no evidence concerning any procedures designed to avoid such a miscalculation, and it failed to carry the burden of proof. *Baker.*

 Continuing this argument, Check-Rite also urges that the notice set out in

full the pertinent portions of § 1–1–115, W.S.1977. Because of that, it contends the clerical errors should have been obvious to Johnson from a reading of the entire notice, and the implication that follows is that the FDCPA excuses the error since it should have been harmless. CheckRite urges the proposition that Johnson "expressed no deception or confusion whatever about the notice." Perhaps Johnson was perceptive enough not to be deceived by this notice, but CheckRite's argument demonstrates a type of abuse sought to be eliminated by the FDCPA. Furthermore, its contention ignores the rule that this act is to be construed to the benefit of the "least sophisticated debtor." *Swanson,* 869 F.2d 1222; *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168 (11th Cir.1985); *Kimber v. Federal Finance Corporation,* 668 F.Supp. 1480 (M.D.Ala.1987). See *Baker,* 677 F.2d 775. See also *Central Adjustment,* 667 F.Supp. 370; *Wright v. Credit Bureau of Georgia, Inc.,* 548 F.Supp. 591 (N.D.Ga.1982), reconsidered 555 F.Supp. 1005 (N.D.Ga.1983). CheckRite's argument with respect to the impact upon Johnson is not material, and CheckRite has not chosen to address the impact of its notice upon the least sophisticated of debtors.

To avoid this precise dilemma, Congress wisely chose to require debt collectors to regulate themselves by the maintenance of procedures adapted to avoid such errors as that demonstrated in this case. The creation of an exception on the ground that Johnson was not deceived would structure precedent that undoubtedly would be invoked by every other debt collection service in future actions. Instead of designing a rule of law, the court would create an unnecessary situation in which the consumers, the debt collectors, and the courts, on an ad hoc basis, would be forced to determine the impact in each individual circumstance. We do not perceive that as an appropriate development in this area of the law and, consequently, in the absence of evidence reflecting procedures designed to avoid such a miscalculation causing an impact upon the least sophisticated consumer, we conclude that the defense is not available to CheckRite. Because the district

court accepted the inadvertence argument in reversing the county court, we overrule the district court's decision and reinstate the determination of the county court on this issue. We hold that CheckRite did violate the FDCPA in this respect. *Baker; Carrigan,* 494 F.Supp. 824.

■ As an additional ground to justify recovery by Johnson, the county court found that CheckRite also violated the FDCPA by sending a demand letter directly to him after it had been advised that he was represented by counsel. The pertinent provision is 15 U.S.C. § 1692c(a)(2) that provides:

"(a) Communication with the consumer generally—Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

\* \* \* \* \* \*

"(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or \* \* \*."

CheckRite admits that it sent an additional communication to Johnson after receiving the advice that he was represented by counsel. It justifies this action by invoking the requirements of § 1–1–115(b), W.S. 1977, requiring notice directly to the drawer of a dishonored check. Its argument is that the second communication is not the kind of communication contemplated by the FDCPA because it was a "formal" act. Its rationalization is that its second notice could never be served properly in accordance with the statute if sent to counsel because all the attorney would have to do to avoid service on his client would be to state that he is not authorized to receive service even though he represents the con-

sumer concerning the debt. CheckRite contends that it was justified by these circumstances in its sending of the notice directly to Johnson.

The FDCPA does not articulate any exception such as that urged by CheckRite. Compare *Bieber*, 631 F.Supp. 1410 (continuing a short telephone conversation immediately after the collector was notified that the debtor was represented by an attorney held not a violation of the FDCPA). In order to comply with the FDCPA, the second notice should have been sent to Johnson's attorney. The communication directly with Johnson, under the circumstances, was an additional violation of the FDCPA. In this respect also, we reinstate the conclusion of the county court and overrule the district court's reversal.

■■■ We now reach two contentions of Johnson adopted by the county court that we cannot support. The first of those is that CheckRite violated the provisions of 15 U.S.C. § 1692e(14) by sending an initial demand letter without advising him of its true name or that it was using a d/b/a name. The statutory provision is clear and provides:

"A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \* \* \* \*

"(14) The use of any business, company or organization name other than the true name of the debt collector's business, company, or organization."

The uncontroverted testimony of the manager shows that Statewide Collections, Inc. was a franchisee of CheckRite, Ltd. and was licensed with the Wyoming State Collection Agency Board as Statewide Collections, Inc., d/b/a CheckRite. Consequently, "CheckRite" is a part of its true name for purposes of applying the FDCPA. There is no sound reason or statutory purpose that would mandate that it use its full and complete name in its communications and notices. It was using a true business

name, and the name used does not exemplify a means likely to deceive or mislead the consumer. As the statute has been applied, even though a debt collector uses its true name, that name still may violate the FDCPA if it has a likelihood of deceiving or misleading the consumer. 15 U.S.C. § 1692e; *Wright*, 548 F.Supp. 591. The use of a name, even though truly and appropriately belonging to the collector, that either states or implies that the collector is something that in fact it is not is a clear violation of the spirit of the statute even though arguably within the letter of the law. If the name would cause the "least sophisticated consumer" to erroneously believe that the entity was a governmental agency or a law office, the use of the name could violate this provision even though it was the correct name for the debt collector. See *Bingham*, 505 F.Supp. at 870.

■■■ The second issue that we cannot support is the contention that a violation of 15 U.S.C. § 1692j and/or action in bad faith occurred because CheckRite failed to notify Johnson that it was no longer the true holder of the instrument allegedly creating the debt. This is the check on which payment had been stopped and which CheckRite had returned to the store. Johnson urges this deception to be contrary to the FDCPA, and he also invokes the Uniform Commercial Code, particularly §§ 34–21–101 to 34–21–1002, W.S.1977. The FDCPA provision specifies:

"(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j.

This section relates to the designing or furnishing of forms to create a false impression on the part of the consumer that some entity other than the creditor is participating in the collection of an alleged debt when that is not fact. The perceived evil the section avoids is a practice of fur-

nishing false forms to creditors. These false forms often are furnished by a collection agency, usually printed in its own name or in the name of some actual or fictitious legal office. They then are used by the creditor who sends them directly to the consumer with the intent that the debtor would be intimidated into paying the debt. See *Riveria,* 682 F.Supp. 174; *Bieber,* 631 F.Supp. 1410; *Central Adjustment,* 667 F.Supp. 370. Because the entity does not actually participate, and there is no intention that it should, the collection fees are significantly less than using the services of the collection agency. Even though this saving of expense may inure to the benefit of the consumer, the problem arises because the creditor is not subject to the constraints of the FDCPA. *Staub,* 626 F.2d 275. This practice creates an opportunity for abuses that often are present, and 15 U.S.C. § 1692j is designed to alleviate the problem by penalizing the third-party collector for furnishing the deceptive forms. Giving the widest range to this provision, it has no pertinency to the facts here. There never was any effort to create the impression that CheckRite was a "holder" of Johnson's check, and it always was obvious that it was collecting the account for the retail merchant. Therefore, this provision of the FDCPA cannot be invoked.

Johnson has satisfied his burden and justified recovery under the FDCPA. It is not necessary to the disposition of this case that we consider the applicability of the cited provisions of the Uniform Commercial Code, and we do not address that argument.

The final matter to be considered is the denial by the district court of attorney fees pursuant to § 1-1-115, W.S.1977. Those attorney fees properly were awarded pursuant to the FDCPA, and Johnson has no need to rely upon the Wyoming statute for the purpose of obtaining attorney fees. Consequently, any ruling as to whether that statute is designed only for the benefit of a collection agency, and does not justify an award of attorney fees to consumers such as Johnson, has no pertinency here. We incorporate no ruling with respect to this issue.

To summarize, we hold the district court properly did have jurisdiction to review the judgment of the county court entered under the Small Claims Act; CheckRite violated 15 U.S.C. § 1692g by failing to properly verify the alleged debt and to mail a copy of such verification to Johnson; CheckRite violated 15 U.S.C. § 1692f(2) by asserting an amount that it was not entitled to recover while failing to maintain procedures designed to preclude the assertion of such an overcharge; CheckRite violated 15 U.S.C. § 1692c(a)(2) by contacting Johnson instead of Johnson's attorney. We rule that CheckRite did not violate the FDCPA by using the name CheckRite instead of Statewide Collections, Inc. in its communication to Johnson or by failing to advise Johnson that it had returned the dishonored check to the retail store. Furthermore, we conclude that a consideration of the application of the Uniform Commercial Code and of the scope of § 1-1-115, W.S.1977, as it relates to attorney fees, are not pertinent to this appeal.

We do sustain the ruling of the county court that Statewide Collections, Inc. violated the FDCPA in three respects, and the judgment in favor of Johnson was justified by these violations. The decision of the district court is reversed, and the judgment entered by the county court is affirmed and reinstated.