In re: The GENERAL ADJUDICATION OF ALL RIGHTS TO USE WATER IN the BIG HORN RIVER SYSTEM and All Other Sources, State of Wyoming (Two Cases).

Dorothy ALEXANDER and Ronald Alexander; James R. Allen and Mary S. Allen; William J. Barmore; Diamond Z Land and Cattle Co.; Gordon Bradford Eastman and Mary Ann Eastman; James Fike, Sr. and James Fike, Jr.; Francis G. Fox and Loretta B. Fox; Griffin Brothers, Incorporated; Kenneth J. Hansen and Gladys E. Hansen; M.J. Heathman and Leah Heathman; George H. Hunker III and Paula L. Hunker; Johnson Cattle Co., Inc.; Lyle L. Klingaman and Connie Klingaman; Robert L. Mitchell and Jane G. Mitchell; Phyllis Shattuck and Kenneth Moore; David Neary and Carolyn Neary; Nirider Land and Cattle Co.; Larry Paxton; Gordon S. Pennoyer; Bob Peralta; W.L. Presgrove and Minnie Presgrove; Charles Roemer and Carol Roemer; Tim Schell; J. Thomas Scrivener and Mary S. Scrivener; Leland L. Shafer; Ralph A. Urbigkit and Eileen Urbigkit; Donald R. Van Riper; Weber Farms, Inc.; Robert A. Williams; Rudy Zupence and Nancy Zupence, Appellants,

v.

UNITED STATES of America, Shoshone Tribe and Northern Arapaho Tribe of the Wind River Reservation, et al., Appellees.

The STATE of Wyoming, Appellant,

v.

UNITED STATES of America, Shoshone Tribe and Northern Arapaho Tribe of the Wind River Reservation, et al., Appellees.

Nos. 89–219, 89–220.

Supreme Court of Wyoming.

Nov. 30, 1990.

Sky D. Phifer, Lander, for appellants, Dorothy Alexander, et al.

Joseph B. Meyer, Atty. Gen., S. Jane Caton, Asst. Atty. Gen., for appellant, State of Wyo.

Richard B. Stewart, Asst. Atty. Gen., and James J. Clear, Atty., Dept. of Justice, Washington, D.C. for appellee, U.S.

Susan M. Williams, W. Richard West, Jr., and Jane Marx, Gover, Stetson, Williams & West, P.C., Albuquerque, N.M., for appellee, Shoshone Tribe.

Andrew Baldwin, Ethete, for appellee, Northern Arapaho Tribe.

Before CARDINE,* C.J., THOMAS, MACY and GOLDEN, JJ., and BROWN, J., Retired.

THOMAS, Justice.

The resolution of this case demands that the court address two legal problems. The first is whether we can reach the merits of the case since it apparently involves an attempt to appeal from an order that is not final. We resolve that question by treating the attempted appeal as a petition for a writ of certiorari that has been granted for the purpose of accomplishing an appropriate interlocutory review. The second question presents the case on its merits and requires us to determine whether the doctrine of *res judicata* forecloses similarly situated parties who did not participate in an earlier appeal taken from an order entered pursuant to Rule 54(b), W.R.C.P.[1],

---

* Chief Justice at time of oral argument.

1. Rule 54(b), W.R.C.P., provides as follows:
   "*Judgment upon multiple claims or involving multiple parties.*—When more than one (1) claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one (1) or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the

from the beneficial ruling by this court in favor of those parties who did appeal. We conclude that an appeal pursuant to Rule 54(b), W.R.C.P., is an interlocutory appeal authorized by our procedural rules and, if the final judgment that is appealed is reversed, the ruling in favor of the appellant becomes the law of the case as it continues in the trial court. As the law of the case, it applies to all parties who remain in the case and, even if those parties did not participate in the appeal, they are not foreclosed from the benefit of the ruling by the doctrine of *res judicata*. The trial court ruled to the contrary, invoking the doctrine of *res judicata* in favor of the appellees-respondents in this proceeding. We reverse the ruling of the district court and remand the case for appropriate further proceedings in accordance with this opinion.

The appellants, whom we treat and shall refer to as successful petitioners for a writ of certiorari, state these issues in their brief:

"1. Did the District Court err in finding that Eastmans, Klingamans and Fike were Indians and that they had an adequate remedy pursuant to Tribal law?

"2. Did the District Court err in finding that the Supreme Court did not have jurisdiction over non-appealing parties so as to preclude them from the benefit of the Wyoming Supreme Court's ruling in this matter in 1988, *In re Rights to Use Water in Big Horn River*, 753 P.2d 76 (Wyo.1988)?

"3. Did the District Court err in finding that Petitioners' claims were barred by the doctrine of res judicata?"

The State of Wyoming, which has aligned itself with these petitioners, states these issues:

"I. Whether the District Court erred in holding that Petitioners are not entitled to a hearing on their claims?

"II. Whether the District Court erred in denying further relief pursuant to § 1–37–110, W.S.1977?"

action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of

The Shoshone and Northern Arapaho Tribes, appellees, which we shall treat as respondents to the petition for writ of certiorari, say that the issues really are:

"I. Whether the District Court correctly determined that appellants received proper notice of the pendency of litigation concerning claims to 1868 treaty-based water rights and were therefore made parties to the litigation?

"II. Whether the District Court properly determined that appellants' failure to appeal and the doctrine of *res judicata* bar their untimely assertion of rights to water with an 1868 priority date?

"III. Whether the doctrine of laches bars appellants' belated attempts to litigate their claims to 1868 treaty-based water rights?

"IV. Whether the District Court correctly determined that the principle of finality in water rights adjudication bars appellants' attempts to relitigate claims to 1868 treaty-based water rights?"

The United States of America, also a respondent as these proceedings have been recast, submits the following issues:

"1. Whether the District Court's order of August 18, 1989, is an appealable order.

"2. Whether the State of Wyoming is a proper appellant.

"3. Whether the District Court had discretion to set aside a final judgment entered in this cause in 1985 against the appellants in 89–219.

"4. Whether, if the District Court had such discretion, it abused its discretion by refusing to set aside the judgment."

These proceedings are a part of an action instituted to accomplish a system-wide adjudication of water rights in Water Division No. 3, State of Wyoming, the Big Horn River Drainage Basin. A detailed recitation of the facts surrounding this litigation is found in *In re General Adjudication of All Rights to Use Water in the Big Horn River System*, 753 P.2d 76 (Wyo.1988), *judgment aff'd sub nom. Wyoming v.*

judgment adjudicating all the claims and the rights and liabilities of all the parties."

*United States*, 492 U.S. 406, 109 S.Ct. 2994, 106 L.Ed.2d 342 (1989), *reh. denied* — U.S. ——, 110 S.Ct. 28, 106 L.Ed.2d 639 (1989), *cert. denied sub nom. City of Riverton Wyoming v. United States*, — U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); *cert. denied Shoshone Tribe and Northern Arapaho Tribe of Wind River Indian Reservation v. Wyoming*, — U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). In developing the resolution of this case, it is appropriate to touch upon some of the pertinent and peculiarly significant facts.

The action was commenced by the State of Wyoming, pursuant to § 1–1054.1, W.S. 1957 (now found as § 1–37–106, W.S.1977), and the McCarran Amendment, 43 U.S.C. § 666 (1980), on January 24, 1977. The purpose of the action was to obtain a general adjudication of water rights in the Big Horn River system and all other sources of water within Water Division No. 3, State of Wyoming. It was intended that all claimants to the use of such water, whether potential or then existing, would be joined as parties defendant. The United States of America, the Shoshone and Arapaho Tribes, and the State of Wyoming were named specifically. In accordance with § 1–37–106, W.S.1977, service of process was made upon a list of unnamed defendants, known and unknown. Service was made upon several thousand known water rights holders by certified mail, return receipt requested. Unknown defendants were served by publication. The summons contained a statement to the effect that a default judgment would be entered against the claimant if the claimant did not file an answer within twenty days if a resident of Wyoming, or within thirty days if a nonresident. Numerous defendants answered, many of them appearing *pro se.*

After service of process had been accomplished and various preliminary matters had been completed, the case was assigned to a Special Master who, to facilitate the proceedings and avoid perceived unnecessary complexities, divided the proceedings into three phases. The focus of the first phase was on the claims of the United States of America and the Shoshone and Arapaho Tribes regarding reserved water rights on the Wind River Indian Reservation and any other water rights established by federal law. The second phase was to focus upon the consideration of claims asserted by non–Indian successors in interest to lands within the Wind River Indian Reservation that once had been owned by Indian allottees and subsequently conveyed. The third phase was reserved for litigation of all claims founded on state court decrees, state certificates of appropriation, state permits that had not been cancelled, or any additional state claims otherwise represented. Phase three was not to commence until phases one and two had been completed.

After reviewing the Special Master's reports and supplemental findings, the district court entered its initial decision on May 10, 1983. That decision was reconsidered and an Amended Judgment and Decree entered on May 15, 1985. In the Amended Judgment and Decree, a claim of an 1868 priority date for water rights was denied to non–Indian claimants. Pursuant to Rule 54(b), W.R.C.P., this ruling denying the 1868 priority date to non–Indian claimants was successfully appealed to this court, although not all parties who had been adversely affected by the district court judgment participated in the appeal.

On February 24, 1988, this court filed its opinion in which the ruling with respect to the claimed 1868 priority date was reversed. *Big Horn*, 753 P.2d 76. We there held that Indian or tribal purchasers of re-acquired lands are entitled to a priority date of 1868 based upon the treaty pursuant to which the Wind River Indian Reservation was established and that those grantees of Indian allottees who had appealed from that adverse ruling in the trial court were also entitled to an 1868 priority date, assuming that they could establish the beneficial use of the water. *Big Horn*. The decision of this court was affirmed, without opinion, by an equally divided United States Supreme Court. *Wyoming v. United States*, 492 U.S. 406, 109 S.Ct. 2994, 106 L.Ed.2d 342 (1989), *reh. denied* — U.S. ——, 110 S.Ct. 28, 106 L.Ed.2d 639

(1989). After the decision of the Supreme Court of the United States was announced, various non–Indian claimants presented petitions to the district court seeking either an 1868 priority date or, alternatively, the reinstatement of rights under an expired state permit. This group of claimants had not previously appeared to present evidence in the case although some members of that group may have initially filed answers. In addition, the attorney for the successful appellants in the prior case petitioned the court to extend, upon remand, the 1868 priority date to those parties who had presented evidence at the proceedings before the Special Master but had not joined in the earlier appeal.

The district court set a hearing date and issued an Order to Show Cause as to why those claims should not be referred to the Special Master. After considering argument for both sides, the district court denied these new requests for relief that were based on the successful appeal. To be consistent with the established program for addressing claims, it deferred resolution of all state water right questions to Phase III. In entering its order, it concluded that this court was without jurisdiction over those new petitioners appearing now for the first time as well as those petitioners who had presented evidence but not joined in the appeal. The doctrine of *res judicata* was invoked to fix the rights of those who had not participated in the appeal of the earlier ruling of the district court to this court and to bar what that court perceived to be a re-litigation of questions already decided. The claimants who were affected by this order, joined by the State of Wyoming, timely filed a notice of appeal to this court. We note that, within this group of claimants, are several individuals, Gordon and Mary Eastman, Lyle and Connie Klingaman, and James Fike, Sr., who had apparently acquired their lands from Indian allottees some time subsequent to the initiation of the water right adjudication. Because they had acquired their lands and any interest in the adjudication proceedings after the case had been

commenced, they had received no notice and had filed no answer.

■ We first address the contention that the court is without jurisdiction to treat the issues on the merits. The United States of America contends that this court has no power to decide the case because the appeal is not taken from a final order. The United States asserts that, since the order entered in the district court leaves matters for future consideration and defers the question of rights under state permits to a later resolution in Phase III even though these petitioners requested resolution of their claims in the alternative, i.e., both their entitlement to 1868 priorities and the reinstatement of expired state permits, the district court order is not a judgment or a final order. We recognize that jurisdiction is fundamental and must be determined whenever placed in issue. *Greenough v. Prairie Dog Ranch, Inc.*, 531 P.2d 499 (Wyo.1975); *State Highway Commission v. Bourne*, 425 P.2d 59 (Wyo.1967). The record supports this assertion by the United States, and it is clear that, in this instance, no Rule 54(b) certification has been made, as was done when the earlier 1985 order was appealed. Even so, we will sustain our jurisdiction to review the case on the merits in this particular instance.

■ The United States correctly asserts that our general rule is that a judgment or final order is a prerequisite to the right of appeal. *Cottier v. Sullivan*, 47 Wyo. 72, 31 P.2d 675 (1934). As a matter of policy, we do not accept fragmentary appeals or attempt to decide matters in a piecemeal fashion. *Kuehne v. Samedan Oil Corporation*, 626 P.2d 1035 (Wyo.1981); *Knudson v. Hilzer*, 551 P.2d 680 (Wyo.1976); *Snell v. Rupert*, 541 P.2d 1042 (Wyo.1975). A judgment or final order must determine all liabilities of all parties, Rule 54(a), W.R.C.P.; *Hoback Ranches, Inc. v. Urroz*, 622 P.2d 948 (Wyo.1981), and should leave nothing for future consideration. *Public Service Commission v. Lower Valley Power and Light, Inc.*, 608 P.2d 660 (Wyo.1980). *See* Rule 1.05, W.R.A.P. Any other order, to be appealable, must be one affecting "a substantial right in an action, when such

order in effect determines the action and prevents a judgment * * *." Rule 1.05, W.R.A.P.; *Mitter v. Black Diamond Coal Company*, 27 Wyo. 72, 191 P. 1069 (1920); *Anderson v. Englehart*, 18 Wyo. 196, 105 P. 571 (1909).

█ Our general rule is not without procedural exception. A trial court has discretion to make an express determination that there is no just reason for delay and to direct the entry of judgment. Rule 54(b), W.R.C.P. *See Wheatland Irrigation District v. McGuire*, 537 P.2d 1128 (Wyo. 1975), *reh. granted in part* 552 P.2d 1115 (1976), *on reh.* 562 P.2d 287 (1977); *Spriggs v. Pioneer Carissa Gold Mines, Inc.*, 453 P.2d 400 (Wyo.1969); *Wheatland Irrigation District v. Two Bar–Muleshoe Water Company*, 431 P.2d 257 (Wyo.1967). This rule permits an appeal to be taken from a decision that does not adjudicate all claims or the rights of all parties when that portion of the adjudication logically can be separated from the remainder of the case. *See Big Horn*, 753 P.2d 76; *Cottier*. When the special requirements are satisfied, the rule provides for an appeal of right. The rule contemplates that the judgment from which the appeal is taken may be reversed, and the rule established by that decision then would affect the completion of the remainder of the action. 4 Am.Jur.2d *Appeal and Error* § 50 (1962). The certification and direction for the entry of judgment pursuant to Rule 54(b), W.R.C.P., is perceived to be one of judicial efficiency, however. If the district court ruling is correct, there need be no further participation by certain parties in the lawsuit or any further litigation of certain claims. On the other hand, if the ruling is reversed, then the lawsuit will continue with those parties present or the claims still preserved and, normally, the case will be stayed pending the decision of the appellate court.

█ In addition to the procedure provided in Rule 54(b), W.R.C.P., this court has developed a procedure for interlocutory review of cases that does not fit the requirements of Rule 54(b), W.R.C.P. We have a rule that justifies review by this court pursuant to a writ of certiorari when it recognizes that special and important reasons to do so are present. Rule 13.01 W.R.A.P.; *Johnson v. Statewide Collections, Inc.*, 778 P.2d 93 (Wyo.1989); *Paull v. Conoco, Inc.*, 752 P.2d 415 (Wyo.1988). The issuance of a writ of certiorari is discretionary with this court, and review in such an instance is not a matter of right as it is with the timely filing of a notice of appeal from a judgment or final order or from an order certified as a final judgment pursuant to Rule 54(b), W.R.C.P. Finding its sources in the common law, the writ of certiorari is issued by a superior court to an inferior court and directs the lower court to transmit its record of proceedings to the appellate court for review. *Call v. Town of Afton*, 73 Wyo. 271, 278 P.2d 270 (1954). Because this is a power vested in the reviewing court and not a matter dependent upon action of the lower court beyond making the ruling that is to be reviewed, the requirement of a final judgment or order is not imposed to sustain jurisdiction. *See* 14 Am.Jur.2d *Certiorari* § 13 (1964).

██ Our exercise of the power of certiorari emanates from the Constitution of the State of Wyoming, *Stogner v. State of Wyoming*, 792 P.2d 1358 (Wyo.1990), and it is invoked when a case from a lower court involves an important state question or is of sufficient public significance to justify a determination by the Supreme Court. Wyo. Const. art. 5, § 3; Rule 13.01, W.R.A.P.; *City of Sheridan v. Cadle*, 24 Wyo. 293, 157 P. 892 (1916). Review pursuant to certiorari is never granted lightly, especially if an adequate alternative remedy is available. *State ex rel. Pearson v. Hansen*, 409 P.2d 769 (Wyo.1966); *Call*. On the other hand, it should be granted without hesitation when the timely resolution of matters coming to our attention is of extreme and lasting importance to the citizens of this state and may contribute to judicial efficiency. Rule 13.01, W.R.A.P. *See Johnson; Sheridan. Cf. Call* (writ denied, but not a matter of state concern).

█ The procedure for seeking review by a petition for writ of certiorari is

set forth in Rule 13.02(a), W.R.A.P. This rule should be followed by litigants who seek a writ of certiorari, but it is not binding on this court when we elect to grant the writ of our own motion. Section 5–2–113, W.S.1977. There is no inhibition in our court rules, the state constitution, or any legislative mandate that precludes this court from, on its own motion, considering a notice of appeal as a petition for writ of certiorari and proceeding with review on that basis. Whenever the court determines that review by certiorari is in the best interests of the state, or its citizens, it may be invoked. Rather than being limited by any formal adherence to a technical process, we are governed by the provisions of the constitution that grant to this court a "power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of [this court's] appellate and revisory jurisdiction," and we will grant review by certiorari when, in our discretion, it is necessary and proper to do so. Wyo. Const. art. 5, § 3. The grant of a writ of certiorari not sought by petition is rare, however, and it will not serve as a substitute for a proper appeal if that is the appropriate remedy. *See Mayland v. State*, 568 P.2d 897 (Wyo.1977).

■ While the court is foreclosed from reviewing these issues on appeal due to the absence of a judgment or final order and by the failure to obtain certification under Rule 54(b), we proceed to review the issues on the merits as though the case had been presented to us by a petition for writ of certiorari that had been granted. Water issues, particularly in this case, are of significant importance to the citizens of Wyoming. It is for that reason that we choose to exercise our constitutional prerogative and address the merits pursuant to a review under our power to grant writs of certiorari. *See Johnson*, 778 P.2d 93. An adequate record already has been provided to justify review of the issues on the merits, and there is no need in this instance to enter an order granting certiorari in order to obtain the appropriate record from the trial court.

In our perception, the jurisdictional question advanced under the authority of *Torres v. Oakland Scavenger Company*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), begs the question that we resolve in this case. The question is not the procedural disenfranchisement of those who failed to join in the earlier appeal. Instead, the question is what does justice prescribe with respect to a rule of law that is established in an interlocutory appeal. We see *Torres* as distinguishable in that regard, and we pursue the jurisdictional question no further other than to note that the question now before this court is whether, as this case continues in the trial court, those who are here as petitioners have the advantage of a rule that has become the law of the case.

As we analyze the history of this particular case, an interlocutory appeal, pursuant to Rule 54(b), W.R.C.P., was taken by some of the parties. That appeal was successful in certain respects, and it resulted in a remand for further consideration in accordance with the rule of law established by the interlocutory appeal. Parties who still were before the district court sought the benefit of that rule of law even though they had not participated in the appeal, but they were foreclosed by the decision of the district court based upon its application of the doctrine of *res judicata*. They now have sought review of this further order of the district court, and our consideration of their claim pursuant to the writ of certiorari that we treat as having been granted makes it unnecessary to attempt to resolve jurisdictional questions relating to their participation in the initial interlocutory appeal.

■ We conclude that the district court erroneously applied the doctrine of *res judicata*, which inhibits the re-litigation of claims on which there has been a full and fair opportunity to determine the merits to a final conclusion. *Delgue v. Curutchet*, 677 P.2d 208 (Wyo.1984). The doctrine rests primarily upon the public need for an end to costly and extensive litigation with its numerous hardships that are imposed upon the parties. *Rubeling v. Ru-*

*beling,* 406 P.2d 283 (Wyo.1965). When the doctrine is properly invoked, *res judicata* absolutely bars subsequent or successive suits on the same matter between the same parties or their privies. *Delgue; Barrett,* 652 P.2d 395. In most cases, the decision on appeal signals the end of the dispute because a favorable decision supporting the trial court terminates the action. Remand for retrial is a common exception to the general rule because *res judicata* is invoked only when the action is concluded.

■ In this particular instance, the doctrine of *res judicata* is inapplicable because no subsequent or successive case on the same subject is presented. *See Delgue; Barrett.* Until Phase III of this action is resolved, every event that occurs in the course of the litigation is a part of the same case originally filed in 1977. Until all claims as to all parties have been resolved, an appeal in which interim relief is sought and obtained is interlocutory in nature. Rule 54(b), W.R.C.P.; *Hoback,* 622 P.2d 948. When the ruling of the trial court is reversed (and the same effect could occur when the trial court is affirmed), the case is returned to the trial court and continues as though the erroneous ruling had not been made.

■ Though an appeal from an interlocutory order sometimes will require application of the doctrine of collateral estoppel, such an appeal does not invoke the doctrine of *res judicata. See Delgue; Barrett.* Because the appeal by which these petitioners seek relief is interlocutory in nature, the policy factors for invoking the doctrine of *res judicata* are not present. There are no inherent barriers to extending to these petitioners, and any other parties similarly situated in the case below, the beneficial result of the earlier review. We do not alter the rationale or result in any manner. The impact of this decision is simply that all parties who have appeared in the case, at least to the extent of filing an answer, and have not been subsequently dismissed, are entitled to the application of any rule that has become the law of the case, no matter how that rule has been established and without regard to whether those parties did or did not participate in the proceedings in which it was established. Fundamental fairness in accord with due process allows no other result. U.S. Const. amend. XIV, § 1.

■ The policy interests of justice and legal consistency also support this holding. Throughout the history of this state, its judicial department has diligently pursued a uniform application of the law so that all parties having similar claims or defenses will be treated alike. This policy enables us to maintain expectations of a certain result upon proof of certain facts even though claims or defenses are brought in separate cases. In the light of this policy history and the goal that it supports, it would be inappropriate to affirm disparate results for parties similarly situated when they present their claims in the context of the same proceeding. No policy of judicial economy or finality demands otherwise. Consequently, we hold that all parties who have similar interests to the claims of the Webbers, Jones, and Graboski are entitled to the benefit of the rule of law established in the prior case.

As a final matter, we address the question of whether the district court erred in its finding that the Eastmans, the Klingamans, and James Fike, Sr. had an adequate remedy pursuant to tribal law. Our review of the record fails to disclose a finding by the lower court that these parties are Indians. For that reason, we disregard that aspect of the ruling. The record does contain a finding by the district court, however, that these five petitioners have an adequate remedy under tribal law, which it invoked as justification for its ruling that it would not consider their claims. We reverse that ruling.

The district court, in entering its order, explained that these parties have an adequate remedy pursuant to tribal law because the joint business council of the tribes had adopted a resolution establishing its policies toward the award of tribal water use permits for those tribal members whose reservation fee lands were used to compute the 1868 treaty water rights. These petitioners meet this proposition by

asserting that they have no rights under the resolution because they are not Indians. They also argue that, in any event, a remedy that requires construing tribal law in the tribal court is inadequate because that court is without jurisdiction over the adjudication of water rights on non–Indian owned fee lands in the state. The respondents do not address this issue directly, and no party cites authority in this area that supports or refutes that proposition. Without reaching that question, however, we do resolve the problem through a straightforward application of our court rules.

■■■■ Rule 25(e), W.R.C.P., provides as follows:

> *"Substitution at any stage*—Substitution of parties, under the provisions of this rule, may be made by the trial court, either before or after judgment, and by the Supreme Court in proceedings on appeal."

This rule affords authority to substitute the five petitioners now before the court for the parties from whom they bought their properties. Both Indian allottees and non–Indian successors of Indian allottees are entitled to reserved water rights with treaty priority dates for the practicably irrigable acreage they are able to demonstrate was either irrigated by their Indian predecessors or put under irrigation within a reasonable time after it was conveyed. We hold that these parties and the other petitioners are similarly situated under the circumstances of this case. We see no reason to distinguish one from the other. *See Big Horn,* 753 P.2d 76. *See also United States v. Adair,* 723 F.2d 1394 (9th Cir.1983), *cert. denied* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984); *Colville Confederated Tribes v. Walton,* 647 F.2d 42 (9th Cir.1981), *cert. denied* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981). Without deciding whether the Eastmans, the Klingamans, and James Fike, Sr. have an adequate remedy pursuant to tribal law, we hold they now are proper parties in this case as it exists in the district court pursuant to Rule 25, W.R.C.P. This holding assumes that their predecessors were parties in the case prior to the transfer of their land.

The judgment of the district court is reversed, and the case is remanded for further proceedings in accordance with this opinion.

GOLDEN, J., filed a dissenting opinion.

GOLDEN, Justice, dissenting.

I respectfully dissent. I am troubled by this court's uninvited exercise of the power of certiorari. I, too, like the majority, have sympathy for these litigants. In a strict legal context, however, I question whether the specific matter in this case is of extreme and lasting importance to all the citizens of this state. Historically, it has been only in that latter context that this court has considered the exercise of the power of certiorari.